**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JOHN J. CUNNEY,               *

                                *

    **Plaintiff**

                                *

    **v.**                            *        **CIVIL NO. JKB-13-2519**

                                *

PATRICK COMMUNICATIONS LLC,
*et al.*,                        *

    **Defendants**                 *

                                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiff John J. Cunney ("Plaintiff"), a citizen of Connecticut, brought this action in diversity against Defendants Patrick Communications LLC ("PCL"), a Maryland limited liability company; W. Lawrence ("Larry") Patrick, a Maryland citizen and PCL principal; and Susan Patrick, likewise a Maryland citizen and PCL principal (collectively, "Defendants"), seeking to recover certain commissions Plaintiff allegedly earned in his former capacity as a vice president at PCL.  Against PCL, Plaintiff asserted breach of contract, quantum meruit, and violation of the Maryland Wage Payment and Collection Act ("MWPCA"), Md. Code Ann., Lab. & Empl. § 3-501 *et seq.*  Against Larry and Susan Patrick, Plaintiff asserted violation of the MWPCA. Plaintiff additionally requested a declaratory judgment with respect to the ownership of a certain Carried Interest in an entity formed for purposes of broadcast spectrum investment and arbitrage, NRJ TV, LLC ("NRJ").[1]

---

[1] As Plaintiff clarifies in his proposed First Amended Complaint ("FAC"), the venture actually comprises four separate entities:  NRJ TV, LLC; NRJ TV II, LLC; NRJ TV III, LLC; and NRJ TV IV, LLC.  (ECF No. 49–3 ¶ 37.)

Now pending before the Court is Plaintiff's Motion for Leave to File an Amended Complaint. (ECF No. 49.) The issues have been briefed (ECF Nos. 49, 50 & 53), and no hearing is required, Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Plaintiff's Motion will be GRANTED IN PART and DENIED IN PART.

## I. Background and Procedural History

Some brief factual context is necessary. In his original Complaint, Plaintiff described himself as one of the nation's leading experts in the "study, allocation and valuation of spectrum which is used for wireless communications and broadcasting." (ECF No. 1 ¶ 10.) In 2009, Plaintiff accepted a position as vice president at PCL, a media asset brokerage firm. (*Id.* ¶¶ 8, 11.) Per his employment agreement with PCL, Plaintiff was entitled to an annual salary of $100,000 as well as commissions associated with certain transactions that he originated, executed, or assisted in executing. (*Id.* ¶¶ 13-14.)

According to Plaintiff, in 2011 Congress authorized the Federal Communications Commission ("FCC") to conduct auctions that would result in the reallocation of spectrum from television stations to wireless service providers. (*Id.* ¶ 20.)[2] Plaintiff had apparently anticipated this development: as early as 2009, he had "presented a series of analyses on the value of the available spectrum to wireless companies to Larry Patrick and persuaded him that [PCL] should market its services in this field." (*Id.* ¶ 21.) Patrick agreed, and he asked Plaintiff to spearhead the effort. Thereafter, as a "direct result of Plaintiff's efforts and in reliance on his work," a group of investors formed NRJ, an investment vehicle contrived for the purposes of (1) acquiring television stations and (2) holding/operating them until such time as their spectrum licenses

---

For simplicity, the Court will refer to these entities—allegedly owned and operated on equal terms—collectively as "NRJ."

[2] Congress actually granted this authorization in 2012, not 2011. *See* Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No. 112-96, tit. VI, 126 Stat. 156, 201.

might be auctioned off.  (*Id.* ¶ 24.)  In consideration for PCL's services, PCL was entitled to a Carried Interest in the venture:  according to Plaintiff, he was "repeatedly promised by Larry Patrick and Susan Patrick that he would receive commissions . . . in the form of equity in the investment entity holding the Carried Interest."  (*Id.* ¶¶ 25-26.)[3]  In spite of such assurances, Defendants have "refused to compensate Plaintiff in any way for his work."  (*Id.*)[4]

Plaintiff terminated his employment with PCL in April 2012 (*id.* ¶ 17), and he filed the present action on August 29, 2013.  On November 4, 2013, the Court entered a Scheduling Order pursuant to Local Rule 103.9 (D. Md. 2014) and Rule 16(b)(1) of the Federal Rules of Civil Procedure.  (ECF No. 13.)  The Scheduling Order warned (in bold font) that "the schedule will not be changed except for good cause."  (*Id.* at 1.)  Among the dates and deadlines established in the Order, motions for joinder of additional parties *and amendment of pleadings* were due on or before March 5, 2014.

As discovery progressed, the parties requested a series of extensions.  On March 28, 2014, the parties filed a joint motion requesting, *inter alia*, postponement of the discovery deadline (originally scheduled for June 5, 2014) to November 14, 2014 (ECF No. 18); the Court granted this request (ECF No. 19).  On October 15, 2014, the parties submitted another joint motion, this time requesting postponement of the discovery deadline to April 15, 201[5] (ECF No. 23); the Court again granted the parties' request (ECF No. 24).  By joint motion, the parties requested further extensions of the discovery deadline to May 15, 201[5] (ECF No. 25); June 30,

---

[3] Plaintiff alleged that he was "both the originator and procuring cause of the [NRJ] transaction and was nearly solely responsible for its implementation and settlement."  (ECF No. 1 ¶ 28.)

[4] In his original Complaint, Plaintiff also alleged that he has been improperly compensated for his participation in the sale of certain television stations—WTVE in Philadelphia, WOCH-CA in Chicago, and WDVB-CD in Edison, New Jersey.  (ECF No. 1 ¶ 32.)  In an August 28, 2015, letter to defense counsel Harriet Cooperman, Plaintiff's attorney Neil J. Ruther indicated that Plaintiff would be withdrawing his claims concerning the Chicago and Edison stations (ECF No. 50–2 at 2), and his proposed FAC indeed omits these claims.  Although the Court largely denies Plaintiff's untimely request for leave to amend, it recognizes that Plaintiff no longer seeks recovery with respect to the Chicago and Edison stations, and it considers those claims stricken from the Complaint.

2015 (ECF No. 35); and September 4, 2015 (ECF No. 41). The Court granted each of these requests. (ECF Nos. 29, 36 & 44.)

At no point during this protracted discovery process did either party move to reschedule the March 5, 2014, deadline for amendment of pleadings; in fact, Plaintiff only informed the Court of his intent to seek leave to amend in a September 8, 2015, status report (ECF No. 45), docketed more than two years after the action had commenced. Then, on September 23, 2015—nearly three weeks after the latest discovery deadline and exactly three weeks before the dispositive motions deadline—Plaintiff filed the pending Motion, seeking (1) to add significant factual content to his Complaint; (2) to name Larry and Susan Patrick as individual Defendants under the breach-of-contract and quantum meruit counts; and (3) to assert a new cause of action, sounding in fraud, against all three Defendants. (ECF Nos. 46, 49.)[5]

Defendants filed a response in opposition on October 7, 2015 (ECF No. 50), and Plaintiff replied on October 26, 2015 (ECF No. 53). Having recognized that the pending Motion would ripen after the dispositive motions deadline, the Court by Paperless Order extended that deadline to November 14, 2015 (ECF No. 52).

Plaintiff's Motion is now ripe for decision.

## II. Standard for a Motion to Amend

A motion for leave to amend pleadings filed beyond the deadline established in the scheduling order will be granted only if it satisfies two distinct standards prescribed in the Federal Rules of Civil Procedure: the "good cause" standard of Rule 16(b)(4) and the more liberal Rule 15(a)(2) standard for amendments of pleadings. *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, Civ. No. JKB-12-2650, 2014 WL 6474221, at *1 (D. Md. Nov.

---

[5] Plaintiff initially filed his Motion in error, having failed to name the parties individually on his proposed FAC. (ECF No. 46.) Plaintiff corrected and refiled his Motion on September 24, 2015. (ECF No. 49.)

18, 2014) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008)). As the Fourth Circuit has recognized, there is "tension within the Federal Rules of Civil Procedure between Rule 15(a) and Rule 16(b)." *Nourison Rug Corp.*, 535 F.3d at 298. On one hand, a motion to amend under Rule 15(a) is generally denied only where the amendment would be prejudicial or futile or where the movant has shown bad faith. *Id.* "On the other hand, Rule 16(b) provides that 'a schedule shall not be modified except upon a showing of good cause and by leave of the district judge.'" *Id.*

In light of this tension, courts in this District have employed a two-step analysis in considering late-filed motions to amend. "[O]nce the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a)." *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 631 (D. Md. 2003); *see also Nourison Rug Corp.*, 535 F.3d at 299 (sustaining district court's application of Rule 16(b) and therefore finding it unnecessary to review district court's application of Rule 15(a)).

The Rule 16(b) inquiry is less concerned with the substance of the proposed amendment and more concerned with its timeliness. "Because a court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,' a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 632 (quoting *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999)). The burden for demonstrating good cause rests on the moving party, *Firemen's Ins. Co. of Wash. D.C. v. Glen-Tree Invs., LLC*, No. 7:11-CV-59-D, 2012 WL 4191383, at *3 (E.D.N.C.

Sept. 19, 2012), and the "focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end.*" *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 632 (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)).[6]

If a movant satisfies its burden under Rule 16(b), the Court will next apply Rule 15(a)— and the burden here is comparatively lighter. Absent evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," and so forth, leave to amend is freely granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Notably, while a court is justified in denying an amendment that would prejudice the nonmovant, "[d]elay alone . . . without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

### III. Analysis

Plaintiff aims to accomplish three principal goals through his proposed amendments to his Complaint. First, he seeks to add significant factual content to the Complaint, fleshing out his professional experience at PCL and the history of the NRJ transaction. Second, he seeks to expand Counts I–II by adding Larry and Susan Patrick as individual Defendants under those counts.[7] Third, he seeks to add a new Count V for "Intentional Misrepresentation/Fraud" against all three Defendants.

The Court addresses each of these proposed amendments below.

---

[6] Moreover, as Magistrate Judge Gesner put it, "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999).
[7] Plaintiff does not actually seek damages from the Patricks under Counts I–II; rather, he requests an order requiring the Patricks to preserve certain assets for his benefit. Plaintiff's new theory is discussed in Part III.B, *infra*.

## A. *Factual Allegations*

In his proposed First Amended Complaint ("FAC"), Plaintiff tells essentially the same story that he presented in his original Complaint, but he weaves significantly more factual content and precision into the narrative. He elaborates on the professional services that PCL delivers (ECF No. 49–3 ¶ 8), and he describes the legislative and regulatory developments underlying the FCC's forthcoming spectrum auction, presently scheduled for March 2016 (*id.* ¶¶ 19-21). He expounds on the "series of analyses" that he allegedly delivered to Larry Patrick in fall of 2009 (*id.* ¶¶ 22-23),[8] and he details the formation of NRJ and his role in that formation (*id.* ¶¶ 27-39). He describes for the first time a separate entity: Drumcree, LLC ("Drumcree"), a Wyoming limited liability company that allegedly holds PCL's interest in NRJ. (*Id.* ¶ 35.) And he sheds new light on the breakdown in his relationship with the Patricks—how they rebuffed his request for an equitable stake in Drumcree; how, after Plaintiff announced his resignation in April 2012, Susan allegedly told him that he would receive nothing from the NRJ transaction;[9]

---

[8] Defendants make much of this revision: they accuse Plaintiff of alleging for the first time that it was "*his* idea . . . to form an investment entity that ultimately became NRJ," and they contend that this significant allegation "was not addressed during the discovery process as it was not part of the Original Complaint." (ECF No. 50 at 16-17.) But Plaintiff does not actually assert that NRJ was "*his* idea"; rather, his proposed FAC clarifies the analyses he presented to Larry Patrick and the initial marketing objectives that eventually ripened into the NRJ venture.

More importantly, as Plaintiff points out in his Reply, he has stated from the beginning of this litigation that he was "the procuring cause of the formation of NRJ," and he pleaded facts in his initial Complaint "showing he performed basically all of the work which formed the basis of NRJ's decisions to purchase specific television stations." (ECF No. 53 at 16.) Further, as evidenced by the interrogatories that Defendants attached to their Memorandum in Opposition (ECF No. 50–3), Plaintiff provided exhaustive detail about his instrumental role in the formation of NRJ. Defendants have latched on to what they perceive as an inconsistency, but the Court is not convinced that Plaintiff's present description of his role in the venture is materially different from what he has been alleging all along.

[9] In their Memorandum in Opposition, Defendants argue that Plaintiff has prejudiced them by changing the effective date of the alleged breach of his compensation agreement with PCL. Defendants read the original Complaint as alleging a breach on December 10, 2010, and their economic expert apparently based his damages assessment on the value of NRJ as of that date. (ECF No. 50 at 17-18.) Now, Defendants complain, Plaintiff alleges that the breach occurred in April 2012—requiring a costly new damages report. (*Id.* at 18.)

Defendants' argument is problematic for two reasons. First, it is not clear that Plaintiff has pleaded two inconsistent dates for the alleged breach. In his original Complaint, he averred that the Patricks refused to compensate him properly after December 10, 2010 (ECF No. 1 ¶ 31); in the proposed FAC, he clarifies that the Patricks resisted his requests for equity in the weeks following October, 2010, and that Susan subsequently informed

and how, on subsequent occasions, both Patricks have confirmed their refusal to grant Plaintiff either an interest in Drumcree or any portion of the auction proceeds to which Drumcree and/or PCL may eventually become entitled. (*Id.* ¶¶ 42-45.)

Without question, Plaintiff's amended FAC presents his case in brighter color and sharper focus. The problem is that well over two years have elapsed since the commencement of this suit. And despite Plaintiff's conclusory assertion in his Motion that "additional facts relevant to the issues in the case became apparent" during discovery (ECF No. 49 at 1), the only "new" information Plaintiff specifically identifies corresponds not to the enhanced factual allegations but rather to his proposed Count V for misrepresentation/fraud.[10] In fact, many if not most of the new factual allegations in the proposed FAC are matters that would have been uniquely within Plaintiff's knowledge (*e.g.*, conversations he had with the Patricks) or matters that he could have easily investigated had he wished to submit a more comprehensive Complaint (*e.g.*, legislative and regulatory developments relating to the FCC auction). Plaintiff proffers no explanation for his failure to plead these details at the outset or, alternatively, to amend within the generous four-month window established in the Court's Scheduling Order. While the Court might have approved a few choice, subtle edits strictly in the interest of clarity, it is disinclined to turn a blind eye where the proposed FAC features far more redline than original text—

him (in April 2012) that he would receive nothing from the NRJ transaction (ECF No. 49–3 ¶¶ 42-44). These enhanced details are not necessarily incompatible with the simple notice pleading of the original Complaint.

    Second, Plaintiff has alleged from the outset that he believes he is entitled to some form of equity in the NRJ venture: according to the original Complaint, "Plaintiff was repeatedly promised by Larry Patrick and Susan Patrick that he would receive commissions . . . in the form of equity in the investment entity holding the Carried interest . . . ." (ECF No. 1 ¶ 26.) Given this allegation, the Court is puzzled by Defendants' determination that damages, if any, would necessarily be limited to the value of the enterprise as of December 10, 2010. The value of an equitable stake contracts and expands with the risks and rewards of equity ownership.

    Equity aside, Plaintiff has made plain all along that he seeks damages equal to a percentage of the full profits that PCL realizes in the forthcoming spectrum auction. Thus, even as the Court denies Plaintiff's request to supplement his Complaint with new factual content, the Court advises Defendants to carefully consider their exposure and to ensure that their defense corresponds with what Plaintiff has actually demanded.

[10] As discussed in Part III.C, *infra*, the Court will permit Plaintiff to plead this new count—primarily because this is the single amendment that Plaintiff has credibly linked to facts he ostensibly learned through discovery.

particularly at this late stage, where that original text has served for so many long months as the basis and the anchor for discovery.

Plaintiff has not carried his burden under Rule 16(b)(4) of the Federal Rules of Civil Procedure: he has not shown good cause for his proposed departure from the Scheduling Order. That Order is not a frivolous piece of paper; it is a critical tool through which the Court is empowered to manage its docket and hold parties accountable for unwarranted delay. Finding no justification for Plaintiff's delay here, the Court will deny Plaintiff's Motion with respect to the new factual allegations in the proposed FAC.[11]

### B. Inclusion of the Patricks Under Counts I–II

In addition to supplying new factual content, Plaintiff would amend Counts I–II to include Larry and Susan Patrick as individual Defendants.[12] As Plaintiff explains it, "discovery revealed that the Patricks assigned PCL's right to an ownership interest in NRJ, and the corresponding right to a share of the profits, to Drumcree." (ECF No. 53 at 5.) Plaintiff seeks to amend so as to "require the Patricks to take such actions as may be necessary to ensure preservation of those assets as to which Plaintiff asserts a right." (*Id.*)

If Plaintiff could credibly allege that he only became aware of the structure of PCL's interest in NRJ, or the existence of Drumcree, through information obtained during discovery,

---

[11] Plaintiff, however, need not despair. Complaints filed in federal court must be facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), but they need not include every minute detail that may eventually become relevant to the pleader's theory of the case. Indeed, Rule 8(a)(2) of the Federal Rules of Civil Procedure prescribes not an extended, meticulous narrative but rather a "short and plain statement of the claim[s] showing that the pleader is entitled to relief." In barring Plaintiff from essentially redrafting his Complaint at this late stage in the pretrial process, the Court imposes no special limitation on the evidence Plaintiff may present as litigation proceeds. So long as his factual assertions correspond to his fundamental allegations and are supported by the requisite degree of proof, the Court sees no reason why Plaintiff cannot make such assertions in a procedurally proper manner (*e.g.*, through a timely summary judgment motion accompanied by appropriate exhibits or through testimony presented at trial in compliance with the Federal Rules of Evidence).

[12] With respect to Count I ("Breach of Contract"), the proposed FAC charges PCL with breach of contract for refusing to grant Plaintiff thirty percent of the Carried Interest; alternatively, it charges Larry and Susan Patrick with anticipatory repudiation for refusing to acknowledge Plaintiff's right to thirty percent of either the Carried Interest itself or the proceeds therefrom. (ECF No. 49–3 ¶¶ 55-56.)

the Court would be inclined to allow his proposed amendments.  Unfortunately for Plaintiff, his proposed FAC belies his explanation here:

> Cunney knew it was customary to structure transactions of this nature in a manner to minimize the tax consequences from the ultimate distributions.  *When he learned that PCL was taking its equity interest in Drumcree*, he wished to avail himself of the same tax benefits as the Patricks, and in October, 2010, Cunney requested assurance that he would receive his agreed percentage of the equity interest *when it was granted to Drumcree*.  Thinking he was referring to the ultimate cash distributions, Susan Patrick told Cunney PCL had not yet been paid, to which Cunney responded by saying that receipt of the equity interest was payment, and he requested his percentage interest.  (ECF No. 49–3 ¶ 42 (emphases added).)

By his own allegations, then, Plaintiff was aware of Drumcree's existence and its position in the NRJ ownership scheme as early as October 2010—almost three years before he filed the present action.  Plaintiff may well have acquired additional details about the structure of the Drumcree entity and/or the broader NRJ transaction through discovery, but that does not explain his failure to name the Patricks (or, for that matter, Drumcree) as Defendants at the outset.  Plaintiff has failed to carry his "good cause" burden under Rule 16(b)(4) of the Federal Rules of Civil Procedure; consequently, his request to add the Patricks to Counts I–II must be denied.  Because the Court resolves this particular dispute under Rule 16, it need not separately determine whether, as Defendants argue, the proposed amendments would be futile under Rule 15.[13]

### C.  New Count V for Intentional Misrepresentation/Fraud

Finally, Plaintiff seeks to assert a new cause of action, sounding in fraud, against all three Defendants.  He alleges that, while Larry and Susan Patrick "made numerous representations . . . leading [Plaintiff] to believe that Plaintiff and Defendants were jointly pursuing business

---

[13] That said, Defendants have presented a persuasive argument that it would be improper to name Larry and Susan Patrick as least with respect to Count I.  (ECF No. 50 at 19-20.)  Plaintiff characterizes himself as a former employee of PCL, not of the Patricks as individuals; his compensation agreement was with the entity, not its agents. *See Hill v. Cnty. Concrete Co.*, 672 A.2d 667, 670 (Md. Ct. Spec. App. 1996) ("If an agent fully discloses the fact that he is an agent and fully discloses the identity of his principal, the agent is not liable on the contract, and the principal is liable on the contract.").

ventures"—including "promises that Plaintiff would receive his percentage of any interest to which Defendants were entitled in the NRJ venture, including the Carried Interest and any profits therefrom"—such statements were false because the Patricks had "no intention of providing any share of the Carried Interest to Plaintiff, and deliberately misled him into performing those services they believed were necessary to obtain the Carried Interest." (ECF No. 49–3 ¶¶ 70, 72, 75.)

As with Plaintiff's other untimely amendments, the Court begins its analysis by applying the good cause standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure. Here, however, Plaintiff has proffered evidence that surfaced near the close of discovery and that Plaintiff credits as the source of his fraud claim. Specifically, Plaintiff points to a deposition of Larry Patrick, concluded on August 27, 2015, in which Patrick testified that Plaintiff was "never going to get equity" and that Patrick "wasn't going to give [Plaintiff] equity that he didn't earn" because he "wasn't part of the formation [of NRJ]." (ECF No. 53–4 at 4-5.) Assuming the truth of Plaintiff's assertion that he first learned of Patrick's intentions during the summer deposition, Plaintiff had good cause to seek leave to amend his Complaint shortly thereafter.

Because Plaintiff has satisfied the good cause requirement of Rule 16(b)(4), the Court next considers whether he has also satisfied the Rule 15(a)(2) standard for amendments before trial. That standard is comparatively lenient: absent evidence of, *inter alia*, prejudice to the nonmoving party or futility of amendment, leave to amend should be freely granted. *See Foman*, 371 U.S. at 182.

Defendants argue, however, that Plaintiff's proposed amendment is futile for two reasons. First, they contend that the statute of limitations has run on Plaintiff's fraud claim; second, they argue that Plaintiff has failed to state a claim for which relief can be granted. The Court addresses each argument in turn.

## 1. *Statute of Limitations*

Defendants argue that (1) fraud claims are governed by a three-year statute in Maryland;[14] (2) Plaintiff's claim would have accrued no later than December 23, 2010, the last date on which Plaintiff alleges that he was promised his contractually mandated compensation with respect to the NRJ venture; and (3) Plaintiff's claim therefore expired on December 23, 2013, almost two years before he submitted the proposed FAC. (ECF No. 50 at 14-15.)

The trouble with Defendants' theory, of course, is that under Rule 15(c)(1), an amendment relates back to the date of the original pleading (in this case, August 29, 2013) where the amendment asserts a claim or defense arising out of the conduct, transaction, or occurrence set out in the original pleading. Defendants do not dispute that Plaintiff's fraud claim arises out of the same general conduct he originally alleged; rather, they contend that the late amendment would prejudice them and that relation back is therefore inappropriate. *See Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 342 (D. Md. 2011) ("The Fourth Circuit has identified two requirements for a claim to relate back under Rule 15(c): (1) there must be a 'factual nexus between the amendment and the original complaint,' and (2) the defendant must have 'notice of the claim' and must 'not be prejudiced by the amendment.'" (quoting *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)), *aff'd per curiam*, 519 F. App'x 199 (4th Cir. 2013).

Yet Defendants' case for prejudice is scant. They complain that discovery has closed, and they note that Plaintiff filed his proposed FAC less than three weeks before the dispositive motions deadline—yet the Court has discretion to adjust that deadline (and others) based on

---

[14] "Under Maryland law, a claim of fraudulent intentional misrepresentation is governed by the general three-year statute of limitations." *Siple v. First Franklin Fin. Corp.*, Civ. No. RDB-14-2841, 2015 WL 2374414, at *6 (D. Md. May 15, 2015) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101)).

developments in these proceedings.[15]  And since Plaintiff's fraud count is grounded in testimony given by Larry Patrick, the Court doubts that Defendants will require extensive new discovery to investigate Plaintiff's claim.  Regardless, to the extent that allowing Count V might inconvenience Defendants, such inconvenience is outweighed by the prejudice Plaintiff would suffer if he were barred from pursuing a claim arising from knowledge he only recently acquired.

### 2. Failure to State a Claim

Defendants argue in the alternative that Plaintiff's fraud claim is futile because it would not survive a motion to dismiss under Rule 12(b)(6).  (ECF No. 50 at 24.)  As Defendants correctly observe, fraud is among those classes of actions that must be pleaded with particularity pursuant to Rule 9(b)—that is to say, the plaintiff must plead the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (2d ed. 1990)).  Moreover, in Maryland, a plaintiff alleging fraud must plead that (1) the defendant made a false representation, (2) the defendant had knowledge of the falsity or acted with reckless disregard for the truth, (3) the defendant intended to defraud the plaintiff, (4) the plaintiff rightfully relied on the misrepresentation, and (5) the plaintiff suffered damage as a direct result of the misrepresentation.  *DeLeon Enters., Inc. v. Zaino*, 608 A.2d 828, 837 (Md. Ct. Spec. App. 1992).

---

[15] Seeking to bolster their theory, Defendants cite *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), which recognized that "prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party."  Yet the *very next clause* in *Johnson* undercuts Defendants' argument:  "*that basis* for a finding of prejudice essentially applies where the amendment is offered *shortly before or during trial*."  *Id.* (emphases added).  No trial is imminent in these proceedings, so *Johnson* is of limited utility to Defendants.

Though not the picture of clarity, Plaintiff's proposed Count V seems to satisfy the essential requirements of Rule 9(b):  he pleads the "who" (the Patricks), the "when" (from July 1, 2010, through December 23, 2010), and the "what" (promises of equity in the NRJ venture and profits therefrom),[16] and he claims that his services made it possible for Defendants to obtain their Carried Interest in the venture.  (ECF 49–3 ¶¶ 70-75.)  As for the elements of the Maryland tort, Plaintiff alleges that the Patricks deliberately misled him so as to secure his services; that he relied on their misrepresentation and had a right to do so; and that he suffered damages stemming from Defendants' fraud.  (*Id.* ¶¶ 74-75, 79.)

Defendants counter, however, that Plaintiff cannot be said to have relied on their purported misrepresentations, because he was under a preexisting obligation to perform his work-related duties.  (ECF No. 50 at 25.)  Plaintiff was, after all, a salaried vice president for PCL.  As he himself avers, he was brought on board *precisely because* of his expertise regarding spectrum valuation.  To the extent that Plaintiff has any cause of action, Defendants posit, such action lies in contract—not tort.  (*Id.* at 26.)

Defendants' point is well taken.  To be sure, Plaintiff's case for fraud as presently delineated seems thin.  Were this the summary judgment stage, Plaintiff would need to adduce, at minimum, admissible evidence that (1) Defendants promised him equity and/or commissions in exchange for the services he rendered with respect to the NRJ deal, (2) Defendants made such promises with the specific intent of deceiving Plaintiff, and (3) Plaintiff's employment contract did not otherwise require him to perform those services.

But this is not the summary judgment stage.  Instead, this rather protracted litigation is still tied up at the pleading stage—and before the Court may deny an amendment as futile under

---

[16] Plaintiff does not explicitly plead the "where," but it appears that the alleged misrepresentations occurred within the scope of his employment relationship with PCL—presumably while he was physically present at work locations or, as per his Reply Exhibit B (ECF No. 53–3), via Internet communications.

a Rule 12(b)(6) theory, it must first find the new claim implausible on its face, accepting all well-pleaded allegations as true and making all reasonable inferences "in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Because the Court finds that Plaintiff has satisfied the pleading requirements for his fraud claim (barely), and because the Court is not persuaded that the negligible prejudice Defendants have articulated outweighs the liberal standard for amending under Rule 15, the Court will grant Plaintiff's request for leave to include Count V in his Complaint.

## IV. Conclusion

For the foregoing reasons, an Order shall enter GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 49).

DATED this 5th day of November, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge